United States District Court
Middle District of Florida
Jacksonville Division

**MARY MARGARET LUPARDUS,**

    *Plaintiff,*

v.                                                                              NO. 3:15-CV-243-J-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

## Order Affirming Commissioner's Decision

    This is a case under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of the Social Security Administration ("SSA") denying Mary Margaret Lupardus's claim for disability-insurance benefits.[1] She seeks reversal, Doc. 27; the Commissioner, affirmance, Doc. 28. This order incorporates the summaries of the evidence provided in the parties' briefs and the Administrative Law Judge's (ALJ's) decision. Doc. 27 at 3–13; Doc. 28 at 7–8; Tr. 39–41, 43–45.

---

    [1]The SSA uses an administrative review process a claimant ordinarily must follow to receive benefits or judicial review of her denial. *Bowen v. New York,* 476 U.S. 467, 471–72 (1986). A state agency acting under the Commissioner's authority makes an initial determination. 20 C.F.R. § 404.900–404.906. If the claimant is dissatisfied with the initial determination, she may ask for reconsideration. 20 C.F.R. § 404.907–404.918. If she is dissatisfied with the reconsideration determination, she may ask for a hearing before an Administrative Law Judge ("ALJ"). 20 C.F.R. § 404.929–404.943. If she is dissatisfied with the ALJ's decision, she may ask for review by the Appeals Council. 20 C.F.R. § 404.967–404.982. If the Appeals Council denies review, she may file an action in federal district court. 20 C.F.R. § 404.981. Section 405(g) provides the basis for the court's jurisdiction.

I.  **Issues**

Lupardus raises two issues: (1) whether the ALJ erred in weighing the opinions of her treating physician, Mark Hofmann, M.D.; and (2) whether the Appeals Council erred in failing to review the case based on new evidence. Doc. 27 at 2.

II.  **Background**

Lupardus is 51 and last worked in January 2011. Tr. 51, 216, 231. She has a high school education, has taken some post-high-school courses, and has experience as a nursing assistant, telephone sales representative, office clerk, mail handler, office manager, medical assistant, and usher. Tr. 41–42, 57–59, 219, 232. She applied for disability-insurance benefits in July 2011. Tr. 193–96. She alleged she had become disabled in January 2011 from thumb, hand, and back injuries originating from lifting an overweight patient at work. Tr. 61–62, 231, 618. The ALJ issued a partially favorable decision in August 2013. Tr. 35–46; 52–88. She submitted additional evidence from November 2013. Tr. 25. The Appeals Council denied review.[2] Tr. 22–27. This case followed. Doc. 1.

III.  **ALJ's Decision and Appeals Council's Action**

The ALJ divided her opinion into two periods: January 24, 2011, to April 1, 2012, and April 2, 2012, to August 27, 2013. Tr. 31–46. For both periods, at step two of the five-step sequential evaluation process,[3] the ALJ found Lupardus has severe

---

[2]If the Appeals Council denies review, the ALJ's decision is the SSA's final decision. 20 C.F.R. § 404.981.

[3]The SSA uses a five-step sequential process to decide if a person is disabled, asking whether (1) she is engaged in substantial gainful activity, (2) she has a severe impairment or combination of impairments, (3) the impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) she can perform any of her past relevant work given her residual functional capacity ("RFC"), and (5) there are a significant number of jobs in the

2

impairments of spine and left-thumb disorders. Tr. 38, 42. At step three, the ALJ found those impairments, individually or in combination, do not meet or medically equal the severity of any impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 38–39, 42–43.

For the period from January 24, 2011, to April 1, 2012, the ALJ found Lupardus had the residual functional capacity ("RFC") to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). At step four, the ALJ found she could perform no past relevant work. Tr. 41. At step five, the ALJ found there were no jobs in significant numbers in the national economy she could perform. Tr. 42. Thus, for that period, the ALJ found her disabled. Tr. 42.

For the period from April 2, 2012, to August 27, 2013, the ALJ found Lupardus had improved as of April 2, 2012, in ways that had improved her RFC, explaining:

> [B]eginning April 2, 2012, the claimant has had the [RFC] to perform less than the full range of sedentary work defined in 20 C.F.R. [§] 404.1567(a) and cannot with her left upper extremity lift or carry more than five pounds. The claimant requires a hand-held assistive device for standing or walking. The claimant can perform no more than frequent left upper extremity pushing/pulling, handling (gross), or fingering (fine). She can no more than occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl. She cannot climb ladders, ropes or scaffolding or tolerate concentrated exposure to extreme heat/cold or humidity. The claimant needs to avoid even moderate exposure to vibration and to workplace hazards (machinery, heights, etc.).

Tr. 43. At step four, the ALJ found she can perform her past relevant work as an office manager and telephone sales representative. Tr. 45. Thus, for that period, the ALJ found her not disabled. Doc. 45−46.

Lupardus submitted additional evidence to the Appeals Council. Tr. 25. The Appeals Council added it to the record. Tr. 26. In denying her review request, the

---

national economy she can perform given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

Appeals Council explained it would review the ALJ's decision if it received "new and material evidence and the decision is contrary to the weight of all the evidence now in the record." Tr. 22. The Appeals Council found no reason to review the ALJ's decision under that or any other rule. Tr. 22–23.

## IV.   Standard of Review

A court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports her findings. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.* Any error is harmless if it did not affect the ultimate determination. *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015).

Whether evidence submitted to the Appeals Council is new, material, and chronologically relevant is a question of law subject to de novo review. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007).

## V.   Analysis

A claimant must prove she is disabled. 20 C.F.R. § 404.1512(a); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 20 C.F.R. § 404.1505.

A.    *Dr. Hofmann's Opinions*

Lupardus argues reversal is warranted because, in finding medical improvement, the ALJ gave insufficient weight to Dr. Hofmann's April 2012 opinion she would need a sit/stand option and July 2013 opinions she could stand or walk for less than two hours in an eight-hour workday, could not tolerate prolonged sitting, and "consistently had severe functional limitations following her back injury." Doc. 27 at 17–27. The Commissioner disagrees. Doc. 28 at 5–9.

Medical improvement is any decrease in the medical severity of an impairment present during the most recent disability finding. 20 C.F.R. § 404.1594(b)(1). "[A] comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement." *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985). If an ALJ finds medical improvement, she must determine if the improvement is related to ability to work. 20 C.F.R. § 404.1594(f)(4). Medical improvement is related to ability to work if there is a decrease in the medical severity of an impairment present during the most recent disability finding and an increase in the ability to do basic work activities. 20 C.F.R. § 404.1594(b)(3).

A medical opinion is a statement from an acceptable medical source (physician, licensed or certified psychologist, licensed optometrist, licensed podiatrist, and qualified speech-language pathologist, 20 C.F.R. § 404.1513(a)) that reflects the nature and severity of an impairment. 20 C.F.R. § 404.1527(a)(2). An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). An opinion from a non-acceptable medical source may be used to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. § 404.1513(d).

The SSA generally will give more weight to the medical opinions of treating sources who have seen claimants a number of times and long enough to have obtained a longitudinal picture of impairments because they "are likely to be the medical

5

professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(c)(2). An ALJ need not give more weight to a treating source's opinion if there is good cause to do otherwise and substantial evidence supports the good cause. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists if the evidence did not bolster the opinion, the evidence supported a contrary finding, or the opinion was conclusory or inconsistent with the treating source's own medical records. *Id.* at 1240−41. Regardless of its source, the SSA "will evaluate every medical opinion" it receives. 20 C.F.R. § 404.1527(c).

The Commissioner is tasked with determining the RFC and deciding whether a claimant is disabled; those are not medical opinions. 20 C.F.R. § 404.1527(d). "Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." Social Security Ruling 96-5p.

Lupardus argues the ALJ erred in giving little weight to Dr. Hofmann's April 2012 opinion she would need a sit/stand option and related July 2013 opinion she could not tolerate prolonged sitting because the record contains evidence to support those opinions. Doc. 27 at 17, 18. Any error in giving little weight to those opinions is harmless because the vocational expert testified the telephone customer service and office manager positons would allow a sit/stand option every 30 minutes. Tr. 82, 84–85.

Lupardus argues the ALJ erred in giving no significant weight to Dr. Hofmann's July 2013 opinions, contending the ALJ's reasoning ("there is no evidence of exacerbation of her condition since April of 2012," Tr. 45) is dubious because the

6

question is not whether her condition worsened but whether it improved. Doc. 27 at 18–21. The context of the ALJ's statement, Tr. 45, shows she did not apply the wrong standard. The opinion read as a whole shows the ALJ did not equate medical improvement with medical constancy. *See generally* Tr. 38–45.

Lupardus argues a "close examination of Dr. Hofmann's treatment notes shows no evidence of any medical improvement."[4] Doc. 27 at 18. She points to portions of his notes showing little or no improvement in some areas. Doc. 27 at 19–20. That some evidence could have supported a finding of no medical improvement does not constitute a basis for reversal and remand given that the Court may not reweigh evidence or substitute its judgment for the Commissioner's. *See Moore*, 405 F.3d at 1211. For review purposes, it is enough that substantial evidence supports the ALJ's contrary finding of medical improvement.

In finding medical improvement, the ALJ moved from a limiting RFC to an only slightly less limiting RFC, indicating the medical improvement he found slight, albeit enough to change the ultimate finding. Lupardus provided inconsistent information about her abilities, saying one thing before the ALJ and another thing before Dr. Hofmann.[5] The medical improvement the ALJ found came more than fourteen months after the workplace injury that caused the impairments and after

---

[4]Lupardus mentions Dr. Hofmann's July 2013 opinion she could stand or walk for less than two hours in an eight-hour workday. Doc. 27 at 19. That is not substantially inconsistent with the RFC because it limited her to sedentary work, which involves sitting, standing, and walking, with standing and walking required only occasionally. *See* 20 C.F.R. § 404.1567(a) (defining sedentary work). Although occasionally means up to one third of the time, *see* Dictionary of Occupational Titles, App'x C (4th ed. 1991), and one third of eight is more than two, the difference is slight.

[5]*Compare* Tr. 59, 61, 73 (July 2013 testimony before the ALJ she needs a cane, a walker and a wheelchair ("all three") to get around, she has not been able to walk without a walker since 2011, and she can sit only 32 minutes at a time) *with* Tr. 579 (January 2013 report to Dr. Hofmann she avoids using a walker, uses a back brace only with increased activities, and can sit only 40 to 50 minutes at a time).

physical therapy and other treatment.[6] Over time, Dr. Hofmann changed his opinion she could not return to work to she could return to work with restrictions. Tr. 488, 582, 677. In January 2012, she reported to Dr. Hofmann mild improvement with physical therapy, a decrease in pain upon coughing or sneezing, an attempt to wean herself off a back brace, and use of a walker only after physical therapy and a cane "at times" at home. Tr. 588. In February 2012, she reported to Dr. Hofmann she was making progress in physical therapy, she could tolerate standing 40 minutes at a time, and her gait was improving. Tr. 587. In March 2012, she reported to Dr. Hofmann medication seemed to help with her sleep and pain, and he stated results from nerve conduction studies were within normal limits, "F Wave" latencies were within normal limits, muscles showed no evidence of electrical instability, the electromyogram study of her lower left limb was normal, and there was no electromyogram evidence of radiculopathy. Tr. 585–86. The same month, a state agency physician opined she could perform a reduced range of sedentary work. Tr. 99−110, and Dr. Hofmann opined she was "inconsistent with her presentation and portrayed greater disability than one would expect with her diagnosis." Tr. 502. In April 2012, Dr. Hofmann opined she has work limitations but inconsistencies in her physical therapy showed "it is very possible [she] is capable of greater activity," she had just a 5% whole person impairment rating, and a functional capacity evaluation would be a waste of time because she would fail the validity criteria. Tr. 494. The same month, Dr. Hofmann observed a negative bilateral straight leg raise and explained "considering her diagnostic studies and medical condition, there is no reason why she should not be more functional than she is." Tr. 584. He added there were no other treatment options and maintained his opinion she could perform at a

---

[6]Tr. 618 (February 2011 report to physical therapy provider describing January 2011 workplace injury); Tr. 43 (ALJ's finding that medical improvement occurred in April 2012); Tr. 285–89, 291–92, 295, 300–09, 311–97, 400–10, 413–22, 441–50, 453–60, 490–565, 612–31, 634–41, 644–50, 653–57, 659–64, 675–76, 681–82, 685, 688–89, 692–708, 714 (treatment notes in between).

reduced range of sedentary work.[7] Tr. 584. She continued conservative treatment with signs of improvement, including reporting to Dr. Hofmann in June 2013 she was in school to become a nursing instructor.[8] Read together, there is substantial evidence to support the ALJ's finding of medical improvement.

Lupardus observes no physician ever found her capable of the RFC the ALJ found. Doc. 27 at 20. Regardless of whether that observation is correct, it would be no basis for reversal and remand because the ALJ was the one tasked with determining the RFC based on all evidence. *See* 20 C.F.R. § 404.1527(d); Social Security Ruling 96-5p.

The ALJ did not err in weighing Dr. Hofmann's opinions. Reversal and remand is unwarranted.

B.   *The Appeals Council's Action*

Lupardus argues the Appeals Council erred in denying her request for review, contending substantial evidence does not support its finding the newly submitted evidence provides no basis for changing the ALJ's decision. Doc. 27 at 21. The Commissioner disagrees. Doc. 28 at 12.

Generally, a claimant may present new evidence at each stage of the administrative process. *Ingram*, 496 F.3d at 1261; 20 C.F.R. § 404.900(b). If she

---

[7]Lupardus acknowledges Dr. Hofmann's March and April 2012 opinions but contends it appears he abandoned them when he stated in July 2013 that she "consistently had severe functional limitations following her back injury." Tr. 597. Under the limited standard of review, the Court may not apply that fresh take on what Dr. Hofmann had implied by his statement; again, for review purposes, it is enough that substantial evidence supports the ALJ's finding of medical improvement.

[8]*See also* Tr. 583 (July 2012 appointment with Dr. Hofmann at which he encouraged her to increase her activity level and noted study revealed no neurological problems); Tr. 579 (January 2013 report to Dr. Hofmann she avoids using a walker, uses a back brace only with increased activities, and can sit 40 to 50 minutes at a time).

presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant. 20 C.F.R. § 404.970(b). Evidence is new if it is non-cumulative. *Robinson v. Astrue*, 365 F. App'x 993, 996 (11th Cir. 2010). Evidence is material if there is a reasonable probability it would change the administrative result. *Washington,* 806 F.3d at 1321. Evidence is chronologically relevant if it relates to the period on or before the ALJ's decision, 20 C.F.R. § 404.970(b), regardless of whether it is provided afterward, *Washington,* 806 F.3d at 1322–23. The Appeals Council will "review the case if it finds that the [ALJ's] action, finding, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). The Appeals Council is not required to discuss evidence submitted after the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 784 (11th Cir. 2014).

The evidence Lupardus submitted to the Appeals Council was a "Vocational Evaluation Report" dated November 21, 2013, by Richard Grissinger, a "Vocational Evaluator" with Vocational Services of Northeast Florida, Inc. Tr. 721−27. He had evaluated her to "identify feasible vocational goals based on interests, aptitudes, academic skills, and intellectual functioning." Tr. 721. He divided the report into sections, "Background Information"; "Reason for Referral"; "Behavioral Observations"; "Disabling Condition"; "Work History"; "Interests"; "Self-Directed Search"; "Test Results" from the "Career Ability Placement Survey," the "Shipley Institute for Living Scale," and the "Wide Range Achievement Test, Revision Four"; and "Vocational Summary/Implications." Tr. 721−27. In the latter section, he opined she cannot return to her former job and is not ready for part-time or full-time work because she is not physically ready, observing "poor balance, poor ability to sit and stand and no ability to care for others." Tr. 727. He adds, "her ability to attend work on a sustained basis is hardly possible at this time." Tr. 727.

Even if Grissinger's opinions are new and chronologically relevant (an arguable point), their submission is not a basis for reversal and remand. As the

10

Commissioner observes, Grissinger is a vocational evaluator with unknown training and thus not an acceptable medical source. *See generally* Tr. 721−27. Although his opinions could be used to show the severity of Lupardus's impairments and how they affect her ability to work, *see* 20 C.F.R. § 404.1513(d), they were based solely on either his lay visual observations or her subjective complaints. *See generally* Tr. 721−27. Although he observed physical signs of discomfort or impairment, he could not assess her credibility through a medical examination, an important matter given Dr. Hofmann's concern about inconsistencies between her behavior and the medical evidence. Tr. 494, 584. Furthermore, his ultimate opinion she cannot work is a determination for the ALJ. *See generally* Tr. 721–22. His opinions, with the rest of the evidence, do not, as Lupardus contends, lead to an "inescapable conclusion" she is disabled. *See* Doc. 27 at 24 (quoted).

The Appeals Council did not err in finding Grissinger's opinions provided no basis for changing the ALJ's decision. Tr. 22–23. Reversal and remand is unwarranted.

## VI.  Conclusion

The Court affirms the Commissioner's decision denying Lupardus's claim for benefits and directs the clerk to enter judgment in favor of the Commissioner and close the file.

**Ordered** in Jacksonville, Florida, on August 31, 2016.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:  Counsel of Record